IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| CALVIN BERNARD BROOKS | * | |
| Petitioner, | * | |
| v. | * | 2:04-CV-1180-WKW (WO) |
| WARDEN CULLIVER | * | |
| Respondent. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a ***petition for habeas corpus*** filed pursuant to § 28 U.S.C. § 2241 by Petitioner Calvin Brooks ["Brooks"], a former state prisoner who was incarcerated at the time of filing. Brooks claims that a prison disciplinary and reclassification proceedings violated his due process rights, and he seeks either a rehearing on the disciplinary or its dismissal/expungement and re-imposition of time already served.[1]

Respondents filed a response to Brooks' petition for habeas relief, and Brooks responded to their submission. Because the record is clear that Brooks is no longer

---

[1] Brooks alleges that his September/October 2000 disciplinary proceedings "resulted in an unlawful taking of over 14 years of actual time served." (Doc. No. 1 at pg. 17.) He asserts that "evidence will show that almost 21 months later at a classification hearing he had 14 years taken from him based solely on hearsay and false claim." (*Id*.) The court notes from the records before it that Brooks was not eligible to earn good time credits because he was serving a life sentence. The court further notes that none of the sanctions imposed on Brooks as a result of the disciplinary proceedings in question affected his sentence in any manner.

incarcerated, the court finds that his application for habeas corpus relief is due to be dismissed as moot.

## I. BACKGROUND

On September 14, 2000, while assigned to the Elba Work Release Center, Brooks stabbed another inmate. Such conduct failed to conform to the rules governing community custody inmates. Consequently, in accordance with Alabama Department of Corrections' ["ADOC"] classification procedures, prison officials initiated reclassification proceedings with regard to a change in placement and/or custody for Brooks. (Doc. No. 13, Exh. 5.)

Brooks also received a disciplinary infraction as a result of the September 14 incident. Following a disciplinary hearing held on September 25, 2000, at which the arresting officer, Brooks, and an inmate witness all testified, the hearing officer found Brooks guilty of assault on another inmate. Sanctions imposed included 45 days disciplinary segregation, 90 days loss of all privileges, removal from work release, and a referral for a custody review. (Doc. No. 13, Exh. 4.)

On October 11, 2000 Brooks had a reclassification hearing. Due to the severity of the assault incident, the Reclassification Board recommended that Brooks' custody be increased to administrative segregation, maximum custody, with placement at either the William E. Donaldson Correctional Facility, Holman Prison, or the St. Clair Correctional Facility. (Doc. No. 13, Exh. 4.)

Brooks filed this petition asserting due process violations with respect to the disciplinary and re-classification proceedings in question. Brooks challenges the sufficiency

of the evidence presented at the hearing which he contends failed to support the findings of the disciplinary hearing officer that he was guilty of the conduct charged. Brooks further maintains that the disciplinary and reclassification proceedings were retaliatory in nature, were the result of a conspiracy among prison officials and ADOC personnel, and violated his right to equal protection.

## II. DISCUSSION

*A. The Request for Injunctive Relief*

Courts do not sit to render advisory opinions. *North Carolina v. Rice*, 404 U. S. 244, 246 (1971). An actual controversy must exist at all times when the case is pending. *Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974). In a case such as this where the only relief requested is injunctive in nature, it is possible for events subsequent to the filing of the complaint to make the matter moot. *National Black Police Assoc. v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997) (change in statute); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner); *Tawwab v. Metz* 554 F.2d 22, 23 (2nd Cir. 1977) (change in policy).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome. *Weinstein v. Bradford*, 423 U.S. 147 (1975); *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987). Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies." Federal courts are not permitted to rule upon questions which are hypothetical in nature or which do not affect the rights of the parties in the case before

the court. *Lewis v. Continental Bank Corp.*, 494 US. 472, 477 (1990). Furthermore,"[t]his case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . [I]t is not enough that a dispute was very much alive when the suit was filed." *Id*.

Because a habeas petition challenges prison officials' authority to keep a prisoner in custody, in general, the petitioner's release moots a habeas petition. *See Lane v. Williams,* 455 U.S. 624, 632 (1982). Where a released prisoner can demonstrate that the challenged conviction will cause him to suffer some future collateral consequences, however, a petition is not moot. *Id.; Carafas v. Lavalle,* 391 U.S. 234 (1968). Accordingly, where a petitioner seeks to challenge the validity of his underlying conviction, he can often satisfy the case-or-controversy requirement of Article III of the Constitution by showing that the conviction affects his ability to vote, engage in certain businesses, serve as juror, or hold public office. *Carafas,* 391 U.S. at 237.

While the presumption of collateral consequences may comport with the reality in the context of criminal convictions, the Supreme Court has held that the same cannot be said for other situations where a conviction is not being attacked. *Spencer v. Kemna,* 523 U.S. 1, 7-8 (1998). *See also Lane,* 455 U.S. at 624 (holding that where prisoner only challenges his sentence, and not his conviction, *Carafas* does not apply). "Thus, *Spencer* counsels a more cautious approach to the presumption of collateral consequences" requiring a petitioner to affirmatively allege and demonstrate such consequences. *See Beachem v. Schriro,* 141 F.3d 1292, 1294 (8th Cir. 1998) (citing *Spencer,* 523 U.S. at 12-14).

In this case, Brooks is not challenging the underlying validity of a conviction or sentence. Rather, he challenges matters pertaining to re-classification proceedings as well as disciplinary action which resulted in various sanctions such as removal from work release, assignment to segregation, and a loss of privileges. Consequently, Brooks must either demonstrate that the proceedings about which he complains will cause (or are still causing) him to suffer some actual, future harm and that a writ of habeas corpus can prevent this harm. Here, Brooks fails to demonstrate that he is or will suffer any collateral consequences from the subject re-classification or disciplinary proceedings, and as noted, *infra*, the Court's decision in *Spencer* militates against a presumption of collateral consequences other than in the context of a criminal conviction.

Brooks' ultimate objectives in filing this action included either expungement of the disciplinary received for assault on another inmate or another disciplinary hearing, or the re-imposition of time served.[2] Because Brooks has been released from custody, the court can no longer provide him with the relief he seeks. Nor has Brooks shown that he is suffering any current collateral consequences from the subject disciplinary or re-classification proceedings or that he will suffer any collateral consequences in the future. Even if he did so allege, the mere possibility of future consequences is too speculative to give rise to a case or controversy. *See Spencer,* 523 U.S. at 7-8. *See also Bailey v. Southerland,* 821 F.2d 277 (5th Cir. 1987) (holding habeas petition challenging prison disciplinary infraction moot after

---

[2] In a request for protective order, Respondent indicates that neither Brooks' disciplinary or reclassification proceedings result in the loss of any sentence credits. (*See* Doc. No. 15.)

petitioner's release); *Adair v. Dretke*, 150 Fed. Appx. 329, 332 (5th Cir. 2005) (following his release from prison, petitioner had no claim that he might in the future be harmed by results of prison disciplinary proceeding); *United States ex rel. Graham v. United States Parole Comm'n*, 732 F2d 849, 850 (11th Cir. 1984) (challenge to parole regulation mooted by release on parole as a favorable decision would not entitle petitioner to any additional relief); *Vandenberg v. Rodgers*, 801 F.2d 377, 378 (10th Cir. 1986) (habeas petition challenging determinations that delayed parole moot after petitioner released on parole).

*B. The Constitutional Claims*

Although Brooks filed the instant action under the provisions of § 2241, he makes claims of constitutional violations which he argues arose as a result of the September 14, 2000 incident. Even if Brooks' claims are cognizable under the habeas statutes, no relief would be available to him on the merits of such claims because they do not rise to the level of constitutional violations as a matter of law.

*i. Equal Protection*

Brooks contends that Respondent violated his right to equal protection by selectively enforcing disciplinary and classification proceedings against him and/or subjecting him to harsher disciplinary sanctions and higher custody levels because he is a known writ writer within the prison system. Equal protection principles require generally that government officials behave in a way such "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Thus, in order to establish a claim cognizable under the Equal Protection Clause, a claimant must, at the very

least, allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on a constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Probation Com'n*, 785 F.2d 929, 932-33 (11th Cir. 1986). Inconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or erroneous or even arbitrary administration of state powers, rather than against instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Inmates themselves do not constitute a suspect or quasi-suspect class entitling such persons to "strict scrutiny" of disparate government treatment. Here, what Brooks complains of is his belief that, as a writ writer, he receives unequal treatment in disciplinary and/or re-classification proceedings because other similarly situated inmates receive lesser sanctions

or increases in their custody level. Thus, Brooks regards this conduct as actionable unequal treatment. Nevertheless, Brooks does not allege that he has been subjected to any tangible unequal treatment by prison officials' conduct such as their decisions being based upon a constitutionally protected interest. As a matter of law, therefore, the allegations supporting this claim, without more, do not rise to the level of a constitutional violation.

   *ii. The Retaliation Claim*

Brooks maintains that the decision to keep him on segregation for longer than forty-five days constituted retaliation for his writ writing activities and his filing of a criminal complaint against various prison officials.[3] Correctional officers may not retaliate against prison inmates for exercising their right of access to the court. *See Wildberger v. Brackness*, 869 F.2d 1467 (11th Cir. 1989); *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986). A successful retaliation claim requires a demonstration that an inmate's exercise of his right to access the courts was a substantial or motivating factor in the prison official's decision to take action. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The method of establishing a retaliation claim is essentially the same as that for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986). An inmate has the initial burden of setting forth a prima face case of unlawful retaliation by a preponderance of the evidence, which once established raises a

---

[3] *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981).

presumption that the prison official retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

To establish a prima facie case, an inmate must show that he was engaged in a protected activity, such as the filing of a lawsuit; that he suffered an adverse treatment simultaneously with or subsequent to such activity; and that there was a causal link between the protected activity and the adverse treatment. *Donnellon*, 794 F.2d at 600-01. If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, 450 U.S. at 255. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court that the proffered reason for the adverse decision is a pretext for retaliation. An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse decision is not worthy of belief. By so persuading the court, the inmate satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful retaliation. *Id*. at 256.

Assuming, for the purposes of this case, that Brooks met his prima facie burden, he

has failed to demonstrate a violation of his constitutional rights. The evidence before the court reflects that prison officials disciplined Brooks and subjected him to re-classification proceedings as a result of his assaultive behavior on September 14, 2000. Brooks' conclusory allegations that prison personnel retaliated against him is insufficient to show that the reasons proffered by them are pretextual. Consequently, his claim of retaliation fails to rise to the level of a constitutional violation.

  *iii. The Classification Claim*

Brooks asserts that the reclassification proceedings held at the Easterling Correctional Facility following his removal from a work release detail in September 2000 violated his rights under the Eighth and Fourteenth Amendments.[4] Specifically, Brooks maintains that prison officials' determination that he should be housed on segregation on close custody status because was too dangerous to be placed in population was erroneous and invalid. The court need not decide whether Brooks was classified improperly at Easterling because, even if his classification was incorrect, his constitutional rights were not violated.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." The Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. In *Sandin v. Conner*, 515 U.S. 472 (1995),

---

[4] Brooks' challenge to his reclassification proceedings on Eighth Amendment grounds is untenable. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (holding that only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations).

-10-

the Court held that federal courts must look to the nature of the deprivation rather than statutory or regulatory language to determine if a state created a liberty interest.

An inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Moreover, a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Constitution itself does not confer any right upon an inmate to any particular custody or security classification); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460 (1983). Because inmates have no constitutional right to a specific classification and/or security status, correctional officials may change their classification for a good reason, a bad reason, or no reason at all. Thus, the decision to house Brooks on segregation on close custody status did not violate his constitutional rights. Because Brooks' allegation fails to assert a deprivation of any constitutionally protected liberty interest, he has no entitlement to due process in connection therewith.

   *iv. The Disciplinary Claim*

Brooks complains that the disciplinary proceedings held in regard to the infraction he received for assaulting another inmate violated his due process rights. In support of his claim

Brooks alleges that he was denied the right to confront and cross-examine witnesses, he did not have access to reports and statements used at the disciplinary hearing, he was not allowed to review evidence at the hearing, he was not allowed to submit questions to the arresting officer and witness, false statements and reports were used at the hearing, evidence of his innocence was withheld, and the hearing officer was biased.

A noted, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. In *Sandin*, 515 U.S. 472, the Court abandoned the *Thompson*,[5] *Olim*,[6] and *Hewitt*[7] methodology for determining the existence of a liberty interest. Under the methodology of those cases, a court ascertained whether a state created a liberty interest protected by the Due Process Clause by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion." In its renunciation of prior case law, the Court held that federal courts must look to the nature of the deprivation rather than statutory or regulatory language to determine if a state created a liberty interest.

> Following *Wolff*,[8] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . But these interests will be generally limited to freedom from restraint which, while not exceeding the

---

[5] *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989).

[6] *Olim v. Wakinekona*, 461 U.S. 238.

[7] *Hewitt v. Helms*, 459 U.S. 460.

[8] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

-12-

> sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. at 483-484 (1995)(footnote added)(citations omitted).  Moreover, the Court specifically rejected the contention that any action taken by correctional officials as a punitive measure encroaches upon a liberty interest protected under the Due Process Clause.  *Id.* at 484.

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin,* 515 U.S. at 485.  Placement in segregation, removal from work release, referral for custody review, and the loss of privileges "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Brooks.  *Id.*  In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Consequently, Brooks' theory of liability under the law as established in *Sandin* is, thus, without merit.  *See Neitzke v. Williams*, 490 U.S. 319 (1989).

    *v. The False Information Claim*

To the extent Brooks complains that false information with respect to the September 14, 2000 incident exists in his prison file he is entitled to no relief.  The evidence before the court reflects that the decision by prison personnel to place Brooks on segregation on close custody and refer him for a re-classification hearing was based on incident reports and disciplinary records regarding Brooks' assault on another inmate while on a work release

detail.  Nothing before the court reflects that these documents and records are either fabricated or false and nor is there any admission by prison officials or Respondent that such documents are false.

While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d at 946. Brooks merely asserts that false information regarding the September 14, 2000 episode is in his prison file. As such, the claim fails to state a constitutional violation. Furthermore, the question Brooks seeks to have adjudicated with regard to the validity of information concerning the September 14 disciplinary has, as noted, been rendered moot by his release, and thus, no justiciable controversy is presented. *See Flast v. Cohen,* 392 U.S. at 95.

    vi. *The Conspiracy Claim*

Brooks alleges that prison officials and ADOC personnel engaged in a conspiracy to effectuate disciplinary action against him. In order to prevail on a conspiracy claim, there must be a demonstration "'that the parties reached an understanding to deny the p[risoner/petitioner] his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied,* 500

U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement . . ." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992). In order for Brooks "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002) (citation omitted). Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Here, there is no evidence to support Brooks' theory that prison officials conspired to deprive him of his constitutional rights. Brooks presents nothing tending to demonstrate that prison and/or ADOC officials "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, Brooks's assertions are self- serving, purely conclusory allegations which fail to produce requisite evidence of a conspiracy. *See Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984); *Bailey*, 956 F.2d at 1122.

*vii. The Conditions Claim.*

Brooks contends that after his removal from work release prison official transferred him to the Easterling Correctional Facility where he was placed on segregation. He alleges that the conditions in the segregation cell violated the Eight Amendment's prohibition against cruel and unusual punishments.

Brooks is no longer incarcerated. He is, therefore, no longer subject to the conditions

about which he complains. Because Brooks has been released, there is no longer a case or controversy to litigate and his claims regarding the conditions of his confinement are subject to dismissal as moot. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Murphy v. Hunt,* 455 U.S. 478, 481-82 (1982); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

Based on the foregoing, the court finds that dismissal of the instant petition as moot is appropriate as reaching the merits of the arguments presented in this action would serve no purpose in light of expiration of Brooks' incarcerative sentence and his release from custody.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the instant 28 U.S.C. § 2241 petition for habeas relief be DENIED and DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **November 20, 2006**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 6th day of November 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE